UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | |
|---|---|
| GEORGE STOKES, MD., ) | CASE NO.1:18CV368 |
| ) | |
| Plaintiff, ) | JUDGE CHRISTOPHER A. BOYKO |
| ) | |
| Vs. ) | |
| ) | |
| NORTH COAST OBSTETRICS & ) | OPINION AND ORDER |
| GYNECOLOGY, INC., ET AL., ) | |
| ) | |
| Defendants. ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter before the Court on a Motion to Remand and for Costs by Plaintiff George Stokes, M.D. ("Plaintiff") (ECF # 8). For the following reasons, the Court grants the Motion, Remands the case to state court and grants costs for Plaintiff.

Plaintiff and Defendant entered into an Employment Agreement in 2003, which set forth the terms by which Defendants were to compensate Plaintiff for his medical services. Plaintiff alleges that Defendants breached this agreement by failing to compensate Plaintiff under the terms of the 2001 and 2003 Employment Agreements. Plaintiff does not allege that he is entitled to any rights or future benefits. Further, Plaintiff alleges that his claim for Breach of Contract and all other claims are based exclusively on the 2003 Employment Agreement and are not preempted by the Employee Retirement Income Security Act ("ERISA"). Lastly, Plaintiff claims that attorney's fees are appropriate due to Defendants' lack of good cause for removal and because Plaintiff has alleged only state claims.


**BACKGROUND**

Plaintiff's claims concern Employment Agreements from 2001 and 2003 between himself and Defendants North Coast Obstetrics & Gynecology, Inc. (North Coast) and Karin Mihalik-Potocza, M.D. ("Dr. Mihalik") (Defendants).  In 2001, Plaintiff and Defendants entered into an employment agreement (2001 Employment Agreement), wherein the parties agreed to the following compensation terms.

> 1. Compensation
>
> Physician's compensation for each year beginning with the starting date shall be based on a percentage of the revenues the Physician generates. The Physician's compensation shall be:
> 50% of the first $400,000 (or a portion thereof) of revenue generated by the Physician each year; 70% of all Physician generated revenue between $400,000 and $600,000 each year; and 85% of all Physician generated revenue above $600,000 each year.

*See* Exhibit A ECF DKT# 1 at 26**.**

In September 2003, Plaintiff and Defendant North Coast entered into a new employment agreement wherein the parties agreed that Plaintiff would be compensated in accordance with the following terms of the 2003 Employment Agreement (relevant part):

> 1. Compensation.
>
> Physician's compensation for each year beginning June 30, 2004 shall be based on a percentage of the revenues with respect to the obstetrics and gynecological services the Physician generates. The Physician's compensation shall be: 50% of the first $425,000 (or portion thereof) of revenue generated by the Physician each year; 70% of all Physician generated revenue between $425,000 and $650,000 each year; and 85% of all Physician generated revenue above $650,000 each year.
>
> In addition, during the term of this agreement, Physician shall receive 30% of all revenues generated from laser services, and each year Physician's Compensation shall include North Coast's contribution to the 401 (k) plan on his behalf.
> 2.Expenses.

> a. North Coast will pay the first $75,000.00 in malpractice insurance premiums on behalf of Physician. Physician shall pay the cost of such coverage in excess of $75,000.00.

*See* Exhibit A ECF DKT#1 at 36.

Plaintiff and Defendants signed the documents and continued their contractual relationship through August 2015 with Plaintiff providing obstetric and gynecological services to North Coast's patients. Around August 2015, Plaintiff requested certain financial documents in order to ensure that he was being properly compensated under the terms of the 2003 Employment Agreement. Plaintiff had information and reason to believe he was the only physician at North Coast providing obstetric services to pregnant patients past the first trimester. Defendants refused to provide the requested information. After the refusal, Defendants notified the Plaintiff that he had 60 days to become board certified in order to comply with the 2003 Employment Agreement. In the 2001 employment agreement, Plaintiff was not board certified. Defendants knew that Plaintiff was not board certified and had not required it previously. Additionally, in August 2015, Defendants took Plaintiff's office keys, prohibited him from using the office computers and did not include him in a North Coast staff meeting. On or about October 26, 2015, Dr. Mihalik terminated Plaintiff's employment at North Coast Obstetrics & Gynecology. Plaintiff filed the original Complaint in The Court of Common Pleas Cuyahoga County, Ohio on November 1, 2015. Plaintiff's Complaint alleges Breach of Contract, Unjust Enrichment, Wrongful Discharge and two counts for Declaratory Judgment. The case was then removed from Cuyahoga County Court on February 15, 2018 by Defendants who contend the Court has federal question jurisdiction over Plaintiff's state law claims because they are preempted by ERISA.

**Remand and Preemption**

In his Motion to Remand and for costs, Plaintiff argues he only asserted state law claims that are not preempted by ERISA because the rights he seeks to enforce arise from the parties' 2003 Employment Agreement and not from an ERISA-governed plan.   Defendants argue that removal in this case was proper because amongst other relief Plaintiff seeks to recover  unpaid contributions to his 401(k) retirement plan.  Defendants argue that Plaintiff makes clear that his Breach of Contract claim under the 401(k) Provision in his 2003 Employment Agreement would not exist if the Plan (ERISA) did not exist.  Defendants contend that the 2003 Employment Agreement makes no promise of 401(k) benefits separate and independent from the Plan (ERISA).

Defendants contend that Plaintiff testified for the first time on January 31, 2018  that North Coast breached the 2003 Employment Agreement when they did not  contribute to the 401(k) "Plan" on Plaintiff's behalf.  This admission prompted Defendants to remove the case to federal court.  Plaintiff's Counsel provided amended discovery claiming that Defendants failed to compensate Plaintiff in accordance with the 2001 and 2003 Employment Agreements by failing to make 401(k) contributions on his behalf and by improperly deducting "employee 401(k) contributions."  Plaintiff did not contest that Defendants' Notice of Removal was timely filed.  Defendants assert that these are admissions by Plaintiff that militate against remand.

 Lastly, Defendants argue that Plaintiff has no legal basis support to resist the Defendants' removal and Plaintiff resorts to name calling, categorizing the Defendants' Notice as "wrongful," "fraudulent," "dilatory," "harassing," and "vexatious."  Defendants suggest that the Court should disregard Plaintiff's unprofessional and unsupported accusations and deny

Plaintiff's Motion to Remand and For Costs.

**<u>Plaintiff's Reply to Defendants' Opposition To Remand and For Costs</u>**

Plaintiff argues that his claims are not for benefits denied under an ERISA-governed Plan but instead involve breaches of his Employment Agreements. According to Plaintiff, Exhibit A to the 2003 Employment Agreement reads "each year Physician's Compensation shall include North Coast's contribution to the 401(k) plan on his behalf." Plaintiff contends that the requested damages stem from Defendants' failure to compensate him in accordance with the provisions of the 2003 Employment Agreement and are limited exclusively to his employment agreements. Further, Plaintiff cites to his response to Defendants' request to describe and quantify all damages alleged. In Plaintiff's response, the 401(k) contributions are a portion, but not the majority of the alleged damages. Additionally, Plaintiff points to the Amended Complaint where the causes of action are all based on state-law. ECF DKT #11, 1-2.

Plaintiff argues that Exhibit A in the 2003 Employment Agreement provides that "each year Physician's Compensation shall include North Coast's contribution to the 401(k) on his behalf." ECF DKT #11 at 2. According to Plaintiff, this verbiage is indicative of Defendants' failure to adhere to the terms of the agreement. Further, Plaintiff argues that Defendants have established a "loose" connection to ERISA, which does not equate to an ERISA cause of action and therefore, does not constitute complete preemption under § 1132(a)(1)(B). Plaintiff argues that the ERISA Plan is not at issue in this case. Defendants' duty to Plaintiff arises exclusively from the 2003 Employment Agreement and not from the Plan (ERISA). ECF DKT #11, at 2.

Finally, Plaintiff attests that he seeks recovery only from his former employers and does not seek repayment of ERISA benefits as damages. ECF DKT #11, at 3. Therefore, Plaintiff

5

argues complete preemption does not exist and his motion should be granted.

## LAW AND ANALYSIS

**Standard of Review**

28 U.S.C § 1441 "provides that an action is removable only if it could have initially been brought in federal court."*Cole v. Great Atl. & Pacific Tea Co.*, 728 F.Supp. 1305, 1307 (E.D. Ky.1990). The burden of establishing federal jurisdiction rests upon the removing party, i.e the defendant. *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir.1994). "Concern about encroaching on a state court's right to decide cases properly before it, requires this court to construe removal narrowly. A removed case must be remanded if the district court lacks subject matter jurisdiction. 28 U.S.C. § 1447( c).

The well-pleaded complaint doctrine establishes that the "plaintiff is the master of the complaint, that [for removal to be proper] a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the case heard in state court." *Warner v. Ford Motor Co.*, 46 F.3d 531,533 (6th Cir. 1995) quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398-399 (1987). In *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) the Supreme Court held the proper legal standard to determine a ERISA preemption is:

> If an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where no other independent legal duty is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B). *Id.* at 210.

The Supreme Court in *Davila* set the standard in order to ensure proper decision making relating to complete preemption. *Id.* at 200, 207, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004):

> A case may only be removed "when a federal statute wholly displaces the state-law cause

of action through complete preemption."*Aetna Health Inc. v. Davila*, 542 U.S. 200, 207, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004). ERISA Section 502 (29 USC § 1132) contains a civil enforcement mechanism, providing that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]"

*Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 612-613 (6th Cir.2013).

Furthermore, *Davila* created a two prong test to determine whether a complete preemption exists under ERISA with respect to a state law claim. According to the Sixth Circuit:

A claim is within the scope of § 1132(a)(1)(B) for that purpose if two requirements are met: (1) the plaintiff complains about the denial of benefits to which he is entitled "only because of the terms of an ERISA-regulated employee benefit plan"; and (2) the plaintiff does not allege the violation of any "legal duty (state or federal) independent of ERISA or the plan terms[.]"

*Gardner v. Heartland Industrial Partners, LP*, 715 F.3d at 613 (quoting *Davila*, 542 U.S. 200, 210 (2004).

The Sixth Circuit has held that there are two types of preemption: complete under § 1132(a) and express under § 1144(a). *Warner v. Ford Motor Co.,* 46 F.3d 531 (6th Cir.1995). "A completely preempted state-law claim 'arises under' federal law and thus vests the district court with federal-question jurisdiction." [E]xpress preemption... is a defense; it is grounds for dismissal, but not for removal. " *Loffredo v. Daimler AG* 500 Fed.Appx. 491, 500, 2012 WL 4351358, 8 (6th Cir. 2012) (internal citations omitted).

Plaintiff and Defendants' disagree about whether Plaintiff's claims are preempted by ERISA and meet the two prong *Davila* Test. Therefore, the Court must determine whether the 2003 Employment Agreement falls under ERISA's complete preemption provision in deciding whether the Breach of Contract claim is completely preempted by ERISA.

**Do Plaintiff's claims meet the first prong under the *Davila* test?**

To determine whether a claim meets the first prong of the *Davila* test, the Court must examine the Complaint and decide whether, "the plaintiff complains about the denial of benefits to which he is entitled,"*Gardner v. Heartland Industrial Partners, LP*, 715 F.3d 609, 613 (6th Cir. 2013), "only because of the terms of an ERISA-regulated employee benefit plan." *Davila*, 542 U.S. 200, 210 (2004). Additionally, in *Milby v. MCMC LLC*, the court determined that "courts look beyond the label placed on a state law claim and instead asks whether in essence such claim is for the recovery of an ERISA plan benefit." 844 F.3d 605, 610 (6th Cir. 2016) (citing *Hogan v. Jacobson*, 823 F.3d 872, 880 (6th Cir. 2016)).

Defendants argue that the first prong is met. However, the Court disagrees and holds that Plaintiff does not make a claim for rights to benefits or damages under the Plan (ERISA); rather, the claim is for unpaid contributions set out in the 2003 Employment Agreement agreed to by both parties. Also, Defendants point to Plaintiff's testimony that Plaintiff did not contest that the Plan containing his 401(k) was an employee pension benefit plan subject to ERISA's civil enforcement provisions. However, counsel for Defendants during Plaintiff's deposition asked "as *part* of your lawsuit here, are you alleging that North Coast Obstetrics & Gynecology Inc violated its contract with you by not contributing to the 401(k) benefit plan on your behalf." ECF DKT#1-3 at 25-26. Defendants fail to acknowledge in their opposition that the 401(k) contribution was only part of the remaining alleged damages.

Additionally, Defendants argue that the first prong of the *Davila* test requires two separate inquiries according to *Daimler*. First, "whether the plaintiff is the type of party that can bring a claim pursuant to § 502(a)(1)(B)," and second, "whether the actual claim that the

plaintiff asserts can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)".

However, in *Daimler,* the court was speaking to the notion of "top hat plans[1]" pertaining to complete preemption. Defendants argue that Plaintiff meets the first element of the *Davila* test, but Defendants have failed to persuade the Court that Plaintiff's state-law claims are regulated under ERISA and thus, Defendants have failed to prove the first element. Defendants' duty to contribute to the 401(k) plan arises independently from the Plan via the 2003 Employment Agreement.

While Plaintiff may be a party who may bring a claim under the ERISA Plan, Plaintiff is not asserting a claim that can be construed as one for benefits under ERISA. Furthermore, Plaintiff did not request damages under the Plan (ERISA) and bases his causes of action solely on state-law obligations imposed on Defendants via the 2003 Employment Agreement. Plaintiff's alleged damages amount to $3,000,000, of which the 401(k) unmatched contribution amounts to only $169,000, which is proportionally smaller in comparison to other uncompensated services. ECF DKT #11 at 1-2. Plaintiff does not seek benefits to which he is entitled solely arising from an ERISA regulated plan.

**Do Plaintiff's claims meet the second prong under the *Davila* test?**

Plaintiff contends Defendants cannot meet their burden on the second prong of the *Davila*

---

[1] A "top-hat plan is "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees," 29 U.S.C. § 1051(2). It "is not required to comply with the substantive protections otherwise applicable to ERISA pension plans." *Daft v. Advest, Inc.*, 658 F.3d 583, 594 (6th Cir. 2011)

test. To determine whether a claim meets the second prong of the *Davila* test, Defendants must demonstrate that "the plaintiff does not allege the violation of any "legal duty (state or federal) independent of ERISA or the plan terms." 715 F.3d 609, 613 (6th Cir. 2013) (quoting *Davila*, 542 U.S. 200, 210 (2004). Further, a court must determine whether there was an independent legal duty that was implicated by the Defendant's actions. If not, the second prong is not satisfied. *Davila,* 542 U.S. at 207, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004).

Defendants cite to *Adriti v. Lighthouse Int'l.,* wherein the Second Circuit found that both prongs of the *Davila* test were satisfied and that the breach of contract claim was completely preempted by ERISA. Defendants point to the similarities between the instant case and *Adriti*. Specifically, the *Adriti* court, in construing an employment agreement stated, "The Agreement merely described the benefits Arditi would receive as a Plan member; it made no promises of benefits separate and independent from the benefits under the Plan." *Arditi v. Lighthouse Int'l*, 676 F.3d 294, 301 (2d Cir. 2012). Defendants argue that this is similar to the 401(k) provision in the immediate case and therefore the second prong of the *Davila* test is satisfied. However, Defendants fail to acknowledge that the Second Circuit relied on language within that employment agreement such as: "reinstatement as a plan member", the title "Lighthouse Pension Plan," "our retirement plan," and cited to Rule 85 of ERISA. *Id.*

Here, Defendants' obligation to make contributions to the 401(k) is found in the **_2003 Employment Agreement_** under "compensation" and "expenses" and states that "Physician's Compensation shall include North Coast's contribution to the 401(k) plan on his behalf. *See* Exhibit A ECF DKT #1 at 30.

Further, Defendants argue that Plaintiff has confused complete preemption and express

10

preemption. Defendants contend that Plaintiff improperly relies on *Wright v. General Motors Corp.*, 262 F.3d 610, 614-615 (6th Cir. 2001), where the court found that Plaintiff's claims were not completely preempted by ERISA because the claim was not for rights or benefits under the ERISA plan as it pre-dates *Davila*. Defendants allege that *Wright* is distinguishable from the instant case because of the nature of the claim (race and sex based discrimination) and that Plaintiff improperly distinguished it. Defendants point to the facts of the case, arguing that the claims in *Wright* would have existed even if the Plan (ERISA) at issue did not exist. However, Defendants fail to acknowledge that while the facts are distinguishable, the claim on which the Sixth Circuit based its decision is relevant to the instant case. The Sixth Circuit held "...we base our decision on the finding that Wright's claim is not completely preempted by ERISA because it is not a § 1132(a)(1)(B) claim for benefits or rights under an ERISA plan." 262 F.3d 610, 614-615 (6th Cir. 2001).

Similarly here, Plaintiff does not allege in his claims any rights or benefits due to him under the ERISA plan, therefore, Plaintiff's reference to *Wright* is appropriate. Plaintiff, in his response to Defendants' opposition, cites to new case-law and cases cited to by the Defendants themselves, bolstering the assertion that his claims are not completely preempted by ERISA.

Plaintiff argues that the 2003 Employment Agreement in and of itself created an independent legal duty between Plaintiff and Defendants fully enforceable without reference to an ERISA regulated plan. This independent duty required the Defendants to abide by the terms of the contract and compensate Plaintiff per its terms. Plaintiff cites to *Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609 (6th Cir. 2013), wherein the Sixth Circuit held that a plaintiff's state-law claim for tortious interference with a contract was not completely preempted

11

by ERISA.

In *Gardner*, the buyer threatened to back out of a purchase agreement when they discovered they would owe $13,000,000 to the plaintiff's executives under the supplemental executive retirement plan (SERP). Defendants' investment firm persuaded the board of directors to declare SERP invalid, which guaranteed that the deal would close. The court pointed to three reasons for its decision that plaintiff's claims were not preempted. First, the defendants' duty not to interfere with the SERP agreement "arises under [state] tort law, not the terms of the SERP itself." *Id.* at 614. Second, the defendants' duty is not "derived from, or conditioned upon, the terms of the SERP. Nobody needs to interpret the plan to determine whether that duty exists." *Id.* Third, although the terms of the SERP would be relevant to measuring damages, any damages awarded to plaintiff "would be payable from the [Defendants'] assets, not from the plan itself." *Id.* at 615.

Similarly here, the provision in the 2003 Employment Agreement (Exhibit A) imposes a contractual duty on Defendants to contribute to Plaintiff's 401(k). The Defendants' duty here is not derived from the ERISA plan, but from the Employment Agreement where Defendants agreed to contribute to Plaintiff's 401(k).

On the issue of attorney's fees and costs, 28 U.S.C § 1447 ( c), provides in relevant part:

> If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.

In *Morris v. Bridgestone/Firestone, Inc.,* the Sixth Circuit held an award of attorney's fees under the above mentioned section rests within the sound discretion of the court and upheld

12

an award of attorney's fees under circumstances similar to those before the Court. 985 F.2d 238, 240 (6th Cir. 1993). Here, due to the unreasonable basis for removal, attorney's fees should be awarded.

Defendants have failed to meet their burden to remove the case and have not convinced the Court that Plaintiff's state-law claims are preempted by ERISA, nor have Defendants established that the 2003 Employment Agreement 401(k) provision would not exist if the Plan (ERISA) did not exist. Defendants point to relevant case law, but accentuated only select excerpts to support their arguments leading to an unsupportable basis for removal. Finally, Defendants have failed to show complete preemption and therefore, the Court remands the case to the Cuyahoga County Court of Common Pleas and awards Plaintiff its costs and reasonable attorneys fees.

## **CONCLUSION**

For the foregoing reasons, the Court grants Plaintiff's Motion to Remand and for Costs. Additionally, Plaintiff shall submit a detailed breakdown of attorneys fees and costs by August 31, 2018. Defendants shall respond by September 7, 2018.

IT IS SO ORDERED.

s/ Christopher A. Boyko<br>
CHRISTOPHER A. BOYKO<br>
United States District Judge

Dated: August 24, 2018